ORDERED.

Dated:  June 19, 2017

_____
K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re | Case No. 8:12-bk-15725-KRM |
| | Chapter 11 |
| BAMBI ALICIA HERRERA-EDWARDS, | |
| Debtor. | |
| _____/ | |
| BAMBI ALICIA HERRERA-EDWARDS, | |
| Plaintiff, | |
| vs. | Adv. No. 8:14-ap-247-KRM |
| ERIC MOORE, | |
| Defendant. | |
| _____/ | |

## MEMORANDUM OPINION ON REMAND

This adversary proceeding is before the Court after remand from the District Court, which vacated this Court's entry of a $44,953.93 judgment against *pro se* defendant Eric Moore ("Mr. Moore").[1] This Court initially ruled that Mr. Moore had fraudulently induced the Debtor

---

[1] Mr. Moore was briefly represented by counsel, McIntyre, Panzarella, Thanasides, Bringgold & Todd, P.A., from October 2, 2013 through April 8, 2014.  He appeared *pro se* in this adversary proceeding.

to enter into a Consulting Agreement, dated July 11, 2012.[2] Thus, the Consulting Agreement was void and unenforceable. But, even if that agreement was valid, Mr. Moore was not entitled to a 17% fee on funds released to the Debtor from escrow shortly before her Chapter 11 case was filed.[3] This Court's judgment was for $44,953.93, plus prejudgment interest.[4] All of Mr. Moore's claims against the estate were disallowed (exceeding $10 million).[5]

The District Court affirmed the disallowance of Mr. Moore's claims, but vacated the money judgment.[6] It remanded that piece of the lawsuit, with instructions that this Court consider three issues:

> (1) Was Debtor fraudulently induced to enter into the Consulting Agreement because of Mr. Moore's failure to disclose his 1999 fraud conviction, as pleaded in Debtor's complaint?
>
> (2) Was Debtor's unjust enrichment claim barred because she had an adequate remedy at law?
>
> (3) Did the Court have the authority to enter a money judgment on the state law claims of fraud in the inducement and unjust enrichment in light of *Stern v. Marshall*?[7]

In response, the Debtor and Mr. Moore have filed additional papers and have presented their positions in oral argument.[8] For the reasons set forth below, the Court again concludes that Debtor is entitled to a money judgment for Mr. Moore's unjust enrichment.

---

[2] The Final Judgment is Doc. No. 78; the associated Memorandum Opinion is Doc. No. 76.

[3] The Debtor filed her Chapter 11 petition on October 17, 2012.

[4] Doc. No. 78. The judgment included prejudgment interest of $5,025.30, for a total award of $49,979.23.

[5] Mr. Moore's Claim No. 18, in the amount of $10,131,219.09, superseded and amended his other claims (Claim Nos. 14, 15, 16, 18) and asserted that it was entitled to priority, pursuant to 11 U.S.C. §507(a)(2).

[6] Case No. 8:15-cv-446-T-27.

[7] 564 U.S. 462, 131 S. Ct. 2594 (2011).

[8] The "active" motions are shown in bold. Motion for Sanctions, filed by Mr. Moore (Doc. No. 117) (withdrawn at Doc. No. 138); **Motion for Reconsideration of Defendant's Motion to Dismiss Counts I, II and III, filed by Mr. Moore (Doc. No. 124)**; Opposition to Moore's Motion for Sanctions, filed by Debtor (Doc. No. 122); Motion for

BACKGROUND FACTS

This Court has previously made detailed findings of fact regarding the Debtor's dealings with Mr. Moore.[9]  So, too, has the District Court.  But, a brief review of how this proceeding developed is relevant to the remaining issues on remand.

The Debtor filed this adversary proceeding on March 14, 2014.[10]  Count I of the Debtor's complaint sought relief for fraud in the inducement, including the following allegations:

> "Prior to entering into the Consulting Agreement, Moore provided the Debtor a copy of his CV and had numerous conversations with the Debtor in December 2010, January 2011, and July 2012, in which he disclosed and touted his experience allegedly representing various high profile clients in the music industry in the recovery of assets.  As Moore disclosed such material information related to this prior dealings and experience, he was under an obligation to

---

Reconsideration of Defendant's Counterclaim, filed by Mr. Moore (Doc. No. 127) (withdrawn in open court on August 9, 2017); **Motion for Final Judgment and Responses in Opposition to Defendant's Motion for Reconsideration of Motion to Dismiss and Defendant's Motion for Reconsideration of Counterclaim, filed by the Debtor (Doc. No. 128)**; Response to Motion for Final Judgment, filed by Mr. Moore (Doc. No. 133)(amended at Doc. No. 137); Motion for Reconsideration of Plaintiff's Motion for Judicial Notice, filed by Mr. Moore (Doc. No. 140) (withdrawn at Doc. No. 145); Opposition to Moore's Motion for Reconsideration of Plaintiff's Motion for Judicial Notice, filed by the Debtor (Doc. No. 143); **Motion to Expedite Ruling on Motion for Reconsideration of Defendant's Motion to Dismiss Counts I, II and III, filed by Mr. Moore (Doc. No. 144)**; Opposition to Motion to Expedite Ruling, filed by the Debtor (Doc. No. 146)**; Motion for Reconsideration of the Rejection Damages Claim and Incorporated Memorandum of Law, filed by Mr. Moore (Doc. No. 147)**; Opposition to Motion for Reconsideration of the Rejection Damages Claim, filed by the Debtor (Doc. No. 148); **Motion for a Determination of the Court's Constitutional Authority to Enter Final Judgment in light of Stern v. Marshall and Notice of the Court's Violation of Due Process Regarding Rule 1.440, filed by Mr. Moore (Doc. No. 149);** Response to Motion for a Determination of the Court's Constitutional Authority to Enter Final Judgment in light of Stern v. Marshall and Notice of the Court's Violation of Due Process Regarding Rule 1.440, filed by the Debtor (Doc. No. 150); **Motion to Recuse Judge, filed by Mr. Moore (Doc. No. 151)**.

Mr. Moore attempts to advance new arguments that he has not previously raised (e.g. violation of due process pursuant to Florida Rules of Civil Procedure 1.440, and that the pleadings for both fraudulent inducement and unjust enrichment are in "fatal conflict" and mutually exclusive, and the finding of both creates an inconsistent verdict.)  To the extent that they raise issues outside the scope of the remand, the Court will not consider them.  *See Lussier v. Dugger*, 904 F.2d 661, 661 (11th Cir. 1990) ("Motions . . . should not be used to raise arguments which could, and should, have been made before the judgment is issued."); *Vallot v. Logans Roadhouse, Inc.*, 2013 WL 5519864 at *1 (M.D. Fla. Oct. 1, 2013) (quoting *Lussier* at 667) ("[M]otions for reconsideration are not to be used 'to raise arguments, which could and should have been made earlier.'"); *See also Prudential Securities, Inc. v. Emerson*, 919 F.Supp. 415, 418 (M.D. Fla. 1996) (citing *American Home Assurance Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)) (allowing parties to raise new arguments post-order would afford parties "two bites at the apple.").

[9] *See* Doc. No. 76.

[10] Doc. No. 1.

provide full disclosure but failed to disclose the fact that he had been criminally convicted of grand larceny for stealing funds under the false pretense that [the stolen] funds would be invested in promoting a Prince concert."[11]

\*      \*      \*

"The Plaintiff was also in a relationship of trust and confidence with the Defendant in which she was required to entrust the Defendant with confidential financial, personal, and tax information, which further obligated the disclosure of his grand larceny conviction. Indeed, the Defendant acknowledged in the Consulting Agreement that he 'is in possession of months of confidential information.'"[12]

Debtor also averred that she had "entered into the Consulting Agreement in reliance on [Mr. Moore's] representations of his experience in the entertainment industry, unaware of the material omission."[13]

Count II set forth Debtor's claim for recovery for unjust enrichment, alleging that she had "never received any recovery as a 'direct result' of [Mr.] Moore's services," and that he "harassed and threatened Plaintiff until she made a payment of approximately $45,000."[14] Debtor further alleged that "Defendant demanded and obtained the benefit of approximately $45,000 that he was not entitled to receive from [Debtor], and under the circumstances, it would be inequitable for [Mr. Moore] to retain [those] funds."[15]

On March 25, 2014, the Court entered its Order Scheduling Pre-Trial Conference, which included the following notice:

"*Not later than the date first set for filing a motion or answer to the complaint, any party objecting to the entry of final orders or judgments by this Court on*

---

[11] *Id.* at ¶ 116.

[12] *Id*. at ¶ 117.

[13] *Id*. at ¶ 119.

[14] *Id.* at ¶ 122.

[15] *Id.* at ¶ 124.

4

*any issue in this proceeding shall file with the court a motion* requesting that this Court determine whether this proceeding is a core proceeding or otherwise subject to the entry of final orders or judgments of this Court. *Failure of any party to file a motion on or before the deadline provided in this paragraph* **shall be deemed consent** by such party to this Court entering *all appropriate final orders and judgments* in this proceeding, subject to review under 28 U.S.C. § 158."[16]

Mr. Moore did not file an objection to entry of final judgment by the bankruptcy court. Instead, he filed an answer, on April 15, 2014, denying the allegations in Counts I and II, asking for a trial on those allegations, and stating affirmative defenses.[17]

Pre-trial conferences were held on April 17 and May 13, 2014. Mr. Moore attended, but did not raise any objection to entry of final judgment by this Court.[18] The trial was scheduled to begin on May 22, 2014.

One week before trial, Mr. Moore filed a motion to dismiss the proceeding, arguing that he did not have a duty to disclose his 1999 conviction and that Debtor had not properly pleaded fraud in accordance with Federal Rule of Civil Procedure 9(b).[19] Mr. Moore also argued that

---

[16] Doc. No. 8 at ¶ 4 (emphasis added).

[17] Doc. No. 15. Mr. Moore denied all of the allegations regarding Debtor's fraudulent inducement claim, and "*demand[ed] strict proof thereof*." *Id.* at ¶¶ 51-56 (emphasis added). Similarly, he denied the allegations in the Complaint regarding Debtor's unjust enrichment claim. *Id.* at ¶¶ 58-61. Mr. Moore asserted that: he did not cause the Debtor injury; he had no duty to reveal his prior fraud conviction; he was the one responsible for the release by ASCAP of the escrowed funds; and the debtor acted in bad faith with unclean hands. He stated affirmative defenses as follows: (1) Debtor's Complaint fails to state a claim upon which relief can be granted and has not properly plead all necessary elements; (2) Debtor failed to mitigate her alleged damages; (3) unclean hands, as Debtor has acknowledged Mr. Moore's work; (4) violations of the Parole Evidence Rule; (5) the alleged damages were the result of acts or omissions of a non-party; (6) the alleged damages were the results of acts or omissions by Debtor; (7) granting the Debtor's requested relief would lead to her unjust enrichment; (8) no act or omission by him led to Debtor's injury; (9) he did not have a legal duty to reveal his prior fraud conviction; (10) it was his efforts that led to the release of the escrowed funds; (11) he authored the motions for turnover that resulted in the removal of payment holds; (12) Debtor failed to act in good faith towards him by failing to compensate him for services rendered; and (13) equitable estoppel bars Debtor's requested relief because Debtor made false representations.

[18] *See* transcripts of hearings, Main Case Doc. No. 504, and Adversary Proceeding Doc. No. 90.

[19] Doc. No. 21, filed on May 14, 2014. *See Id.* at ¶ 3 ("Unless specifically requested by Plaintiff, Defendant was under no obligation to disclose his criminal record with Plaintiff."), at ¶ 4 ("Defendant was not legally required to disclose information that is already public knowledge."), and at ¶ 5 (". . . Plaintiff's claims for fraudulent inducement and misrepresentation cannot survive Defendant's Motion to Dismiss unless the allegations in the

5

Count II should be dismissed because he had earned the $45,000 payment and because Debtor did not lack an adequate legal remedy. His motion did not contest this Court's authority to enter a final judgment.

Two days later, Mr. Moore filed a motion for summary judgment seeking this Court's validation of his analysis of documents and orders entered in 1997 in the Connecticut probate case of the estate of Debtor's late husband, musician Bernard Edwards.[20] Mr. Moore asserted that the Debtor had acknowledged being in receipt of "recovered copyrights," and that the only real issue in dispute was whether he was the one who recovered them.[21]

At the beginning of the trial, on May 22, 2014, Debtor's counsel suggested that consideration of Mr. Moore's motions to dismiss and for summary judgment be deferred until conclusion of the trial.[22] Mr. Moore did not object.[23] The trial took place over six days, May 22 and 23, July 14-16, and 28, 2014. On July 7, 2014, mid-trial, Mr. Moore filed a "counterclaim" which essentially restated his pending claims against the estate and was treated as such.[24]

---

Complaint satisfy rule 9(b)'s specificity requirement, of which they do not. Plaintiff merely claims that defendant didn't tell her about his past. Per Rule 9(b), Plaintiff must be more specific than that.").

[20] Doc. No. 22, filed on May 16, 2014.

[21] Mr. Moore, a non-lawyer, was not a party in the probate case. His principal contention has always been that he is entitled to a substantial payment for developing a theory regarding Debtor's entitlement to a larger share of her late husband's royalties from copyrights and other sources, as a result of alleged inconsistencies among a 1997 handwritten mediation stipulation, subsequent agreements, and court orders entered in the probate case. This Court has rejected the Debtor's claims against the other parties in the probate case, in Adversary Proceeding 8:13-ap-00641-KRM. That ruling is on appeal.

[22] Citations to the trial transcripts will be cited as "[date] Tr. pp.__." *See* 5/22 Tr., p. 8, lines 14-20.

[23] At trial, Mr. Moore did not voice any objection to this format and never addressed his motions with the Court; he instead remained silent following Debtor's counsel's suggestion. Mr. Moore selectively chose to discuss other preliminary issues with the Court, such as the admissibility of exhibits, before beginning his opening statement. In his Motion for Reconsideration of Plaintiff's Motion to Dismiss, filed on July 7, 2016, Mr. Moore acknowledged that "[t]he *parties stipulated* at trial that the issues raised in the defendant[']s motion to dismiss would be addressed at trial . . . " Doc. No. 118 at fn 1 (emphasis added).

[24] *Complaint and Countersuit for Damages*, Doc. No. 48. His counterclaims consisted of breach of contract, unjust enrichment, bad faith, and theft of services (civil theft). The counts are essentially justifications for Mr. Moore's

Mr. Moore actively participated in the trial. He gave testimony; he called and cross-examined witnesses, including the Debtor. Mr. Moore elicited credible testimony by the Debtor of unpleaded facts supporting her fraudulent inducement claim, as discussed later in this opinion.

After the trial, the parties submitted written closing arguments.[25] In his, Mr. Moore addressed Debtor's count of fraud in the inducement, but argued only that he did not have a legal duty to reveal his prior conviction. He contested the claim for unjust enrichment as frivolous and lacking merit. He did not address the Rule 9(b) issue that he had raised on the eve of trial, nor did he object to entry of a final judgment by this Court.

On January 29, 2015, this Court issued a written opinion, consistent with an earlier bench ruling, stating that it was:

> ". . . compelled to conclude that the claim of having found $500,000 (or other new sources of money) that could be recovered quickly was a falsehood and, therefore, constitutes fraud and a false pretense. There is nothing in the record to support that claim. This '$500,000' has never been identified or recovered. But, it was the critical 'hook' to induce [Debtor] to sign the Consulting Agreement. The fraud is compounded by Moore's undisclosed financial interest in the lawsuit which put [Debtor] in a financially vulnerable position when offered his 'unique position' for a fee. The conclusion is inescapable that [Debtor] and her royalty income were targeted by Moore and that he used false pretenses to induce her to sign the Consulting Agreement."[26]

In addition, this Court concluded that it was Debtor's lawyers, not Mr. Moore, who had caused ASCAP to release $265,000 from escrow. Thus, Mr. Moore was not entitled to a 17%

---

proof of claim. Mr. Moore did not specifically pursue these counts during the trial or in his written closing statement (Doc. No. 75), and instead utilized those arguments in an effort to have his bankruptcy claim allowed.

[25] *Plaintiff's Post-Trial Brief* (Doc. No. 74) and *Defendant Eric Moore's Closing Statement* (Doc. No. 75).

[26] Doc. No. 76 at pp. 13-14.

fee, even if the Consulting Agreement was enforceable. Accordingly, Mr. Moore had been unjustly enriched by the $45,000 payment.[27]

The District Court affirmed this Court's disallowance of Mr. Moore's claims against the bankruptcy estate. But, the District Court vacated the money judgment, concluding that this Court had:

> ". . . erred by basing its judgment on allegations of fraud that were neither pleaded nor tried with Moore's express or implied consent, and by failing to address the merits of Moore's argument relating to the viability of the fraud claim as it was pleaded."[28]

> "The bankruptcy court also failed to address Moore's argument that the unjust enrichment claim was barred because [Debtor] had an adequate legal remedy. Accordingly, the monetary judgment is vacated and this matter is remanded for further consideration, including a determination of the bankruptcy court's authority to finally adjudicate the state-law claims in light of *Stern* . . . ".[29]

## DISCUSSION

A.  <u>Bankruptcy Court Jurisdiction</u>

In *Stern v. Marshall*,[30] the Supreme Court held that the unlimited scope of the statutory designation of "counterclaims" as "core" proceedings, in 28 U.S.C. §157(b)(2)(C), was an unconstitutional infringement of the Article III judicial power. In doing so, the Court ruled that Article I bankruptcy courts could not enter final judgments on counterclaims unless they arise

---

[27] *Id.* at pp. 25-26. The Court denied Mr. Moore's motions to dismiss and for summary judgment (*see* Doc. No. 77) and ruled in favor of Debtor on all of Mr. Moore's counterclaims (*see* Doc. No. 78).

[28] Doc. No. 116 at p. 9.

[29] *Id*. 116 at p. 14. Debtor's complaint alleged that the Consulting Agreement was fraudulently induced because Mr. Moore failed to reveal his prior fraud conviction. In turn, the District Court ruled that the Debtor had not pleaded two other alleged facts on which this Court relied in making its ruling.

[30] 564 U.S. 462 (2011). In that case, Mr. Marshall had filed a proof of claim for defamation in the bankruptcy case of Vickie Lynn Marshall, a/k/a Anna Nicole Smith. The debtor objected to the claim in an adversary proceeding, to which she added a state law counterclaim against Marshall for tortious interference.

under the Bankruptcy Code or where the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."[31]

In 2014, the Supreme Court addressed the lingering procedural question of how bankruptcy courts should adjudicate so-called *Stern* claims, claims which are statutorily "core," but which may not be decided with finality by an Article I bankruptcy court. In *Executive Benefits Insurance Agency v. Arkison*,[32] the Supreme Court held that *Stern* claims may be adjudicated in the same manner as non-core ("related to") claims, as provided in 28 U.S.C. §157(c). Bankruptcy judges may conduct trials of *Stern* claims and then issue proposed findings of fact and conclusions of law to the district court, which may review both factual and legal issues *de novo*.[33]

Before this adversary proceeding was commenced, the District Court for the Middle District of Florida entered a general administrative order adopting the 28 U.S.C. § 157(c) procedure for *Stern* claims. The district court may "treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution."[34]

In *Wellness International Network, Limited v. Sharif*,[35] the Supreme Court answered the significant issue remaining after *Stern* and *Executive Benefits*: "Article III permits bankruptcy

---

[31] *Id.* at 499.

[32] 134 S. Ct. 2165 (2014).

[33] *Id.* at 2170.

[34] *In re: Standing Order of Reference Cases arising Under Title 11, United States Code*, 6:12-mc-26-ORL-22 (M.D. Fla. Feb. 22, 2012).

[35] 135 S.Ct. 1932 (2015).

courts to decide *Stern* claims submitted to them by [the litigants' implied] consent."[36] When determining such consent, "[t]he key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the [bankruptcy court]."[37]

This Court's rulings on the Debtor's claims against Mr. Moore for fraud in the inducement and unjust enrichment were necessarily resolved in the claims allowance process, as contemplated by *Stern*. The adjudication of Mr. Moore's claims against the bankruptcy estate brought into question the validity and scope of the Consulting Agreement. In turn, this Court's interpretation of the scope of the Consulting Agreement was decisive as to whether Mr. Moore was entitled to any pre-petition compensation on the $265,000 that ASCAP released from escrow.

In addition, Mr. Moore consented to the entry of final judgment of this Court. He was given notice that the issue of jurisdiction must be raised by the "date first set for filing a motion or answer to the complaint." Mr. Moore did not object by that deadline. Instead, he filed an answer denying the Debtor's allegations and demanding that the issues of fraudulent inducement and unjust enrichment be tried. He filed a motion for summary judgment. He participated in the trial, developing the record on those issues. He submitted a post-trial brief. At no time prior to the entry of judgment did Mr. Moore raise the *Stern* issue. Based on his conduct in this

---

[36] *Id.* at 1949.

[37] *Id.* at 1948 (internal citations omitted). On remand, the Seventh Circuit determined that Sharif had forfeited his *Stern* argument because it was not timely raised. *Wellness Intern. Network, Ltd. v. Sharif*, 617 F. App'x 589, 590-591 (7th Cir. 2015). "By waiting until his reply brief to challenge the bankruptcy court's authority to decide the alter-ego claim, Sharif failed to preserve his challenge, and we will not address the issue." *Id.* at 591.

proceeding, the Court concludes that Mr. Moore gave implied consent to the entry of a final judgment by this Court.[38]

B.  Debtor's Fraudulent Inducement Claim

When Mr. Moore introduced himself to the Debtor, he knew that she was in financial distress.[39] He touted his ability to find $500,000 for her quickly;[40] he represented that he had previously worked with high profile clients in the entertainment industry and helped them find money.[41] But, he did not disclose that he had been convicted of grand larceny in 1999 for a financial scam – taking investors' money on the false pretense of investing in a *Prince* concert.[42] Debtor only learned about that conviction later through the work of a private investigator.[43]

Mr. Moore has not challenged the materiality of his 1999 conviction; he has not disputed that he built a relationship of trust with the Debtor. His principal contention is limited: he did not have a duty to disclose his criminal record because it was a matter of public record, citing to

---

[38] *See* e.g., *In re Danley*, 552 B.R. 871, 889 (Bankr. M.D. Ala. 2016) (appearing and advocating at several hearings, as well as filing an answer and counterclaim, was deemed to be implied consent); *In re Pearlman*, 515 B.R. 887, 892 n.21 (Bankr. M.D. Fla. 2014) (a request for partial summary judgment waived a *Stern* objection); *In re Clean Burn Fuels, LLC*, 540 B.R. 195, 199 n.2 (Bankr. M.D. N.C. 2015) (filing a motion for summary judgment deemed consent to the bankruptcy court's entry of a final judgment, even though defendant did not consent to entry of a final judgment in its answer); *In re Carter*, 506 B.R. 83, 88 (Bankr. D. Ariz. 2014) (a *Stern* objection is deemed waived by seeking summary judgment; otherwise, that party could seek a substantive ruling by the Bankruptcy Court, and then waive the *Stern* objection if the ruling is favorable, but insist on it if unfavorable, and get a second bite at the apple).

[39] 5/22 Tr. pp. 45, 56-57.

[40] 5/22 Tr. pp. 49-50, 55-56, 62-64; 7/15 Tr. pp. 29, 33-35, 39-41; 7/23 Tr. p. 14; Pl.'s Ex. 38, Consulting Agreement ("Consultant has discovered a significant amount of funds and/or property related to or due to the estate of her late husband . . . ").

[41] 7/15 Tr. pp. 42, 106-108.

[42] 5/22 Tr. p. 62; 7/15 Tr. p. 43; Doc. No. 15, Answer ¶ 74, n.1, Ex. B (attaching articles describing the crime).

[43] 7/15 Tr. pp. 43-44.

1999 articles from the New York Times, MTV and People Magazine.[44] Mr. Moore argues that it was Debtor's obligation to search the public record to find his conviction.

He relies on the case *Pressman v. Wolf*,[45] decided in 1999 by the Third District Court of Appeals, which pronounced the rule that "[s]tatements concerning public record cannot form the basis for a claim of actionable fraud."[46] But, that rule was rejected in 2002 by the Florida Supreme Court in *M/I Schottenstein Homes, Inc. v. Azam*.[47] In that case, the seller of home lots claimed that it did not have a duty to disclose the zoning of adjacent land to purchasers because the zoning was a matter of contemporaneous public record.[48] The Florida Supreme Court, rejecting *Pressman's* legal premise, held "that the question of whether a cause of action for fraudulent misrepresentation exists where the putatively misrepresented information is contained in the public record is one of fact . . . ."[49] The question "is whether the recipient of the misrepresentation is justified in relying upon its truth."[50]

---

[44] *See* Doc. No. 15 at ¶ 74; Doc. No. 21 at ¶¶ 3, 6, 7, and 25.

[45] 732 So.2d 356 (Fla. 3rd DCA 1999).

[46] *Id.* at 362.

[47] 813 So.2d 91 (Fla. 2002).

[48] *Id.* at 92.

[49] *Id.* at 94.

[50] *Id*. *See also*, *Butler v. Yusem*, 44 So. 3d 102, 103 (Fla. 2010), where the Florida Supreme Court overturned the trial court's denial of a claim for fraudulent misrepresentation because the alleged victim did not do sufficient due diligence regarding an agreement to construct a commercial retail and office building. Plaintiff had a conversation with a bank officer to verify the reputation of his business partners, but did not question the banker thoroughly enough to provide him with relevant available information about the partners; the trial court had denied Butler's claims because he did not establish his justifiable reliance on the bank officer's statements. *Id*. at 103-104. The Florida Supreme Court reasoned, however, that "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows that the representation to be false or its falsity is obvious to him." *Id*. at 105 (quoting *Besett v. Basnett*, 389 So.2d 995, 998 (Fla. 1980)). "Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Id*. Florida's policy is "to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." *Id*. (quoting *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 336-37 (Fla. 1997)).

12

For a claim of fraud or fraudulent inducement there must be a false statement regarding a material fact, or the omission or nondisclosure of a material fact.[51] A duty to disclose material information arises when "[the defrauded] party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties"[52] or when a party undertakes to disclose some, but not all, material information.[53]

Mr. Moore's criminal conviction was too distant to reasonably expect Debtor to have known of it, or to have discovered it on her own. Mr. Moore is not a public figure. The felony conviction occurred in another state, more than a dozen years before the Debtor and Mr. Moore met. There is nothing in the record to suggest that the Debtor ever read the magazines or the articles attached to his answer.

He sought out the Debtor, then made selective representations of his background to convince her of his skill and trustworthiness. His duty to disclose the 1999 conviction arose after he provided selective parts of his background to impress the Debtor and build her trust.

Withholding the fact of his 1999 conviction was a pertinent omission that was essential to Mr. Moore's campaign to get Debtor to trust him and execute the Consulting Agreement. In the

---

[51] *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 297 (11th Cir. 2015) (citing ZC *Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. 4th DCA 2003)) ("Florida law recognizes that fraud can occur by omission"); *Gutter v. Wunker*, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994) ("A defendant's knowing concealment or nondisclosure of a material fact may also support an action for fraud where there is a duty to disclosure."); *Ward v. Atlantic Sec. Bank*, 777 So.2d 1144, 1146 (Fla. 3d DCA 2001) ("Fraud also includes the intentional omission of a material fact."); *Berg v. Capo*, 994 So.2d 322, 327 (Fla. 3rd DCA 2007) ("Fraud may be established by either an intentional misrepresentation or omission of a material fact."). The other elements of a fraudulent inducement claim that are not in contention are: (1) knowledge that the representation is false; (2) intent that the representation induces another's reliance; and (3) consequent injury to the party acting in reliance. *See Butler*, 44 So. 3d at 105; *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (citing *Wadlington v. Cont's Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. 4th DCA 2005)).

[52] *State v. Mark Marks, P.A.*, 698 So.2d 533, 539 (Fla. 1997) (citations omitted).

[53] *ZC Ins.*, 847 So.2d at 551 ("Florida law . . . places a duty on one who undertakes to disclose material information to disclose that information fully."); *Friedman v. American Guardian Warranty Services, Inc.*, 837 So.2d 1165, 1166 (Fla. 4th DCA 2003) ("Where a party in an arm's-length transaction undertakes to disclose information, all material facts must be disclosed.").

absence of disclosure of the 1999 conviction, the Debtor reasonably relied on Mr. Moore's other representations of skill and trustworthiness to find new royalty sources. The Debtor made the decision to pay Mr. Moore a 17% fee on such new, additional royalty income. She had no reason to suspect that Mr. Moore would demand a fee on the historical royalties that her lawyers were working to recover from escrow.[54] Such a suspicion might well have arisen, however, if Mr. Moore had disclosed his criminal record. The fact of this non-disclosure is sufficient to conclude that the Debtor was defrauded.

Moreover, Mr. Moore developed the trial record of his false representation that he had found $500,000 that could be quickly recovered. First, he published his own email to Kendall Minter, one of Debtor's former lawyers, and then queried the Debtor about how she was defrauded:

> *Q [by Mr. Moore]: "Okay. And I'm going to publish this email, and let me know if you recall receiving it.*
>
> *It says, 'Kendall, hello, hope all is well. Per our conversation, I've discovered over $500,000 due to Ms. Edwards. Enclosed is a copy of my consultant agreement. I can recover the money in seven to fourteen days.' And it's dated January 16th, 2012. Do you recall receiving that email?"[55]*
>
> *               *          *          **
>
> *A [by Debtor]: "Yes."*
>
> *Q:      "Okay. And at this point, it's your understanding that I've attached a consultant agreement and I'm offering services to you because I've discovered over $500,000; correct?"*
>
> *A:      "That's what it says here."[56]*

---

[54] *See Butler*, 44 So.3d at 105, quoting *Bessett,* 389 So.2d at 998 ("a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him."); *Democratic Republic of the Congo v. Air Capital Group, LLC*, 2013 WL 3223688, at *5 (S.D. Fla. June 24, 2013) ("In the context of fraud, demonstrating "justifiable reliance" is not necessary, and a party is not required to investigate the representation before relying upon it.").

[55] 7/28 Tr. p. 14, lines 6-13.

[56] *Id.* at p. 14, line 19-24

And:

> *Q* [by Mr. Moore]*: "Okay. Do you believe I defrauded you in any way?"*
>
> *A:     "Absolutely."*
>
> *Q:     "Okay.  **Well, tell the Court how you think I defrauded you.**"*[57]
>
> \*     \*     \*
>
> *A:     "You were supposed to get paid from finding of money that was out there. And that's how you and I – that's how I entrusted you with all of this information. Because I said, 'Well, if it's out there to be found and if you can do the job, then you deserve to get paid from that.*
>
> *And that's how our relationship – that's how you gained my confidence, because my relationship grew with you from the fact that you sold me this, you know, **'I can find the money, where none of your attorneys are doing a good job in finding, you know, this lost money or this money that's out there.***
>
> *You and I would have hour-long discussions. And I felt that, you know, wow, this guy is really aggressive. You know, he really, you know, is not afraid to pick up the phone or, you know – you were fearless. And I said, 'Wow, okay, well maybe there is something out there.' I just started believing it.*
>
> ***But, Mr. Moore, I have not received a dime of anything that you said that you found***.*"*[58]

Mr. Moore consented to the inclusion in the record of the unpleaded fact of his false representation to the Debtor of being able to find $500,000 quickly. This fact was properly relied on by this Court, in accordance with Federal Rule of Civil Procedure 15(b)(2),[59] in finding that the Debtor was fraudulently induced to sign the Consulting Agreement.

---

[57] *Id*. at p. 49, lines 12-15.

[58] *Id*. at p. 52, lines 2-20.

[59] FRCP 15(b)(2) provides: "*For Issues Tried by Consent*. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

C.  Debtor's Unjust Enrichment Claim

A finding of unjust enrichment requires proof that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof.[60] The remedy for an unjust enrichment is "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."[61]

This equitable remedy is not available, however, where adequate legal remedies exist, such as a claim for breach of contract.[62] Mr. Moore argues that because he and Debtor were parties to the Consulting Agreement, she had a contractual remedy that bars her from the unjust enrichment claim.[63]

But, the Debtor did not have an adequate legal remedy. The Consulting Agreement was either unenforceable or, if valid, did not provide for a fee to Mr. Moore on account of ASCAP's release of the escrowed funds.[64] Debtor credibly testified that she paid Mr. Moore only because

---

[60] *Lesti v. Wells Fargo Bank, N.A.*, 2013 WL 6095441, *4 (M.D. Fla., Nov. 20, 2013) (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citation omitted)).

[61] *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (citing *Butler v. Trizec Props., Inc.*, 524 So.2d 710, 711 (Fla. 2d DCA 1988).

[62] *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) (reversed in part on other grounds) (citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998)).

[63] *See* Doc. 21, ¶ 14.

[64] This Court has previously determined that the Consulting Agreement did not require any payment in the circumstance of ASCAP's release of royalties to which Debtor was already entitled. Further, it was the Debtor's lawyers, not Mr. Moore, who caused ASCAP to release Debtor's $265,000 of historical royalties from escrow. Doc. No. 76 at p. 25. The Court's finding that Mr. Moore did not provide any compensable services to obtain ASCAP's release of funds was affirmed on appeal. *See* Doc. No. 116 at p. 13 ("the bankruptcy court's alternative determination that Moore provided no compensable services under the agreement is due to be affirmed.")

16

he harassed her by multiple demands for payment of a 17% commission on that $265,000.[65] The record also supports the inference that the Debtor made the payment so as not to alienate Mr. Moore, whom she believed had the ability to find additional, but unknown, sources of copyright and other royalties.[66]

Mr. Moore received some $44,953.93 to which he was not entitled. The payment was outside the scope of any contract. It would be inequitable for Mr. Moore to retain that payment. Thus, the Debtor has established a claim for unjust enrichment.[67]

## CONCLUSION

Mr. Moore procured the Debtor's execution of the Consulting Agreement through actual falsehood and material omission. He promised a quick recovery of $500,000, an unpleaded fact which he later introduced into the record. He provided only an edited portrait of his background, including his confidential work for high-profile people in the music industry, to build a relationship of trust with the Debtor. Thus, he had a duty to disclose another material piece of his background, the 1999 grand larceny conviction.

Mr. Moore did not cause ASCAP to release $265,000 from escrow. Nevertheless, he repeatedly demanded that Debtor pay a 17% fee on those funds. He was unjustly enriched by receipt of that payment, but she has no legal remedy.

---

[65] 7/15 Tr. pp. 47-49; 7/28 Tr. p. 181.

[66] *See* 7/28 Tr. pp, 22-23, 38, 52-53.

[67] Even where an express contract exists, a cause of action for unjust enrichment may stand if the contract and the questionable payment do not concern the same subject matter. *See Cafaro v. Zois*, 2015 WL 3821752 at *19 (S.D. Fla. June 2, 2015) ("Because the Agreement does not fully govern the precise transfer at issue in this claim, it does not preclude [the] unjust enrichment claim."); *AutoNation, Inc. v. GAINsystems, Inc.*, 2009 WL 1941279 at *4 (S.D. Fla. July 7, 2009) (citing *In re Managed Care Litig*., 135 F.Supp.2d 1253, 1269 (S.D. Fla. 2001)) (general rule prohibiting unjust enrichment claim where parties are privy to a contract does not apply when claims "concern matters outside the scope of the contract."); *Berlinger v. Wells Fargo, N.A.*, 2014 WL 7073757 at *5 (M.D. Fla. Dec. 15, 2014) (party entitled to pursue claim for unjust enrichment because relief sought did not fall under agreement at issue).

The Court again concludes that it is appropriate to enter judgment for unjust enrichment against Mr. Moore in the principal sum of $44,953.93, together with prejudgment interest from September 7, 2012 at the rate of 5.05% in the amount of $10,859.51, totaling $55,813.44, on which interest will accrue at the federal rate.[68] The Court has authority to enter the judgment because the Debtor's claim for recovery was necessarily resolved in the adjudication of Mr. Moore's claims against the estate. Further, Mr. Moore is deemed to have consented to this Court's entry of a final judgment by his failure to timely raise the issue. Accordingly, a Final Judgment is due to be entered. Nevertheless, to the extent necessary and appropriate, this ruling shall be deemed to be a report and recommendation to the District Court.

For the reasons stated in this Memorandum Opinion, the Court will enter separate orders regarding the pending motions referenced in footnote 8.

Clerk's office to serve.

---

[68] As prescribed by 28 U.S.C. § 1961. The rate was 1.20% as of June 16, 2017.